645 A.2d 1230

WINSLOW TOWNSHIP BOARD OF EDUCATION, APPELLANT, v. BOARD OF REVIEW, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 1, 1994—Decided July 21, 1994.

Before Judges BRODY, STERN and KEEFE.

*Steven D. Weinstein* argued the cause for appellant (*Blank, Rome, Comisky & McCauley,* attorneys; *Mr. Weinstein* and *Jeffrey Blumenfeld,* on the brief).

*David Earle Powers,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. Powers,* on the brief).

The opinion of the court was delivered by

BRODY, P.J.A.D.

The Winslow Township Board of Education (Winslow) is one of seven local school districts that comprise the Lower Camden Regional School District (Regional). Regional is a "limited purpose" regional district because it does not provide all the school needs of its constituent local school districts. Each local school district has its own primary schools, K–6. Regional owns two high school buildings and two junior high school buildings, one of each being in Winslow Township. Winslow's student population, which constitutes 41% of Regional's students, is growing at a rate substantially exceeding that of Regional's other local school districts. As a result, Winslow considers that it has enough students to withdraw from Regional and provide its own more efficient K–12 program.

The tortuous procedure for withdrawing from a limited purpose regional district is found in *N.J.S.A.* 18A:13–51 to –65. The process begins when the withdrawing school district petitions the county superintendent of schools to "make an investigation as to the advisability of withdrawal," *N.J.S.A.* 18A:13–51, and ends with a special school election "at which time the question whether or not the withdrawing school district shall withdraw from the regional district ... shall be submitted to the legal voters of the withdrawing district and to the legal voters within the remainder of the regional district[.]" *N.J.S.A.* 18A:13–57.

Before such an election may be held, the county superintendent must first prepare a detailed report of facts bearing on the financial and educational advisability of the withdrawal as it would affect the withdrawing and remaining local school districts. *N.J.S.A.* 18A:13–52. That report must then be submitted to an *ad hoc* "board of review," composed of the Commissioner of Education, a member of the State Board of Education to be appointed by its president, the State Treasurer or a designee, and the Director of the Division of Local Government Services in the Department of Community Affairs. The board must then conduct a public hearing on whether to grant the withdrawing district's petition. It must then decide the issue by majority vote. *N.J.S.A.* 18A:13–56. These procedures were followed and resulted in the board's authorizing a special school election.

Winslow appeals from the board's determination of a secondary but important issue. To induce the voters in the remaining local school districts to approve the withdrawal, Winslow wants to pay Regional approximately $5,000,000 if the vote is favorable. It needs to issue school bonds to finance the payment. That new indebtedness, if authorized, must be disclosed to the voters before the election as part of the total fiscal picture produced by the withdrawal. *N.J.S.A.* 18A:13–58. The board of review declined to permit Winslow to issue bonds for that purpose. In its written decision addressed to Winslow and signed by the Commissioner of Education as its Chairperson, the board addressed the issue as follows:

> With regard to your proposal to issue general obligation bonds to provide a compensating payment to the remaining constituent districts, my office has consulted with the Office of the Attorney General and determined that there is no provision in the law or code which would permit such action to be taken. Since this is the case I am advising you that you may not issue school bonds in this manner.

We agree.

Winslow finds authority for issuing the bonds in *N.J.S.A.* 18A:24–5, which permits a local school district to issue school bonds for the "acquisition or construction of buildings for any lawful purposes[.]" It will acquire the high school and junior high

school buildings situated in the Township upon withdrawal under the provisions of *N.J.S.A.* 18A:13–61, which provides in relevant part:

> The withdrawing district and the remaining districts ... shall take title to and control of all school grounds and buildings, and the furnishings and equipment therein ... situated in their respective districts on the effective date of withdrawal ... as established by the commissioner [of education].

Winslow argues that it may lawfully compensate Regional for its acquisition of the two school buildings and grounds.

■■■■ Before discussing the merits, we note our agreement with the parties that the appeal was properly taken to this court from the decision of the board of review. Ordinarily, we do not hear a school law matter until after the State Board of Education has rendered a decision. *Dore v. Bedminster Tp. Bd. of Ed.,* 185 *N.J.Super.* 447, 452, 449 *A.*2d 547 (App.Div.1982). However, the State Board has authority to review only a determination of the Commissioner of Education. *N.J.S.A.* 18A:6–27. Here the Commissioner has no authority to act alone on the matter because as a member of the board of review he or she has only one vote. Thus a determination of the board of review is a final decision of a state administrative agency and therefore may be appealed as of right to this court. *R.* 2:2–3(a)(2).

■■■ We return to the merits. Even if it can be said that Winslow will "acquire" the two schools upon withdrawal, it does not follow that it may lawfully pay for them. Title to the schools passes by statute upon withdrawal not upon purchase. Paying $5,000,000 to Regional to induce a favorable vote in the remaining local school districts is more like buying an election than buying the school buildings. *See Citizens to Protect Public Funds v. Parsippany–Troy Hills Bd. of Ed. et al.,* 13 *N.J.* 172, 180–81, 98 *A.*2d 673 (1953) (local board of education may not expend funds to persuade voters how to vote at an election). If the withdrawal statute treats the withdrawing district or the remaining local school districts unfairly, then the remedy is to change the statute, not to make side deals among the local school districts. Where withdrawal produces a real inequity, the board of review may

exercise its authority to deny the petition for any reason "which it may deem to be sufficient." *N.J.S.A.* 18A:13–56b4.

The record does not demonstrate Winslow's claim of inequity. For starters, we do not know the market value of the buildings and grounds Winslow would acquire upon withdrawal or whether Winslow has already paid for the property through its contributions over the years to the Regional budget. The $5,000,000 figure is arrived at by using replacement costs, without regard for depreciation, developed in the superintendent's report for reasons that follow. *N.J.A.C.* 6:3–7.2(a)9.

A local school district may not avoid paying its share of a regional district's debt by withdrawing from the regional district. The superintendent's report must calculate the share of the regional district's debt, related to its property, that the withdrawing district must assume. The share is arrived at by comparing the replacement cost of the property the withdrawing district will acquire with the replacement cost of all the regional district's property before the withdrawal. *N.J.S.A.* 18A:13–53 provides in relevant part:

> The county superintendent shall calculate the amount of indebtedness relating to buildings, grounds, furnishings, equipment and additions thereto so to be assumed on the basis of the proportion which the replacement cost of the buildings, grounds, furnishings, equipment, and additions thereto of the regional district situated in the withdrawing district ... bears to the replacement cost of the buildings, grounds, furnishings, equipment and additions thereto situated in the entire regional district.

The superintendent found the replacement cost of the four buildings and their grounds situated in the entire region to be $63,331,355 (including $3,316,355 for land) and the replacement cost of the two buildings and their grounds situated in Winslow to be $30,539,230 (including $1,824,230 for land). The comparison would require Winslow to assume about 48% of Regional's debt related to Regional's school property. The superintendent's calculation of these figures was academic because Regional will discharge the last of its indebtedness in August 1994. Thus there is no debt for Winslow to assume.

The inequity identified by Winslow arises from an item in the superintendent's report stating that Winslow contributed about 40% of Regional's operating expenses for the school year 1993–94, a figure based on equalized taxable real estate values within the region. Winslow argues that these figures demonstrate that Winslow paid into Regional only 40% of its last annual budget but upon withdrawal will acquire two schools worth 48% of the replacement cost of all schools in the region before withdrawal. Winslow claims it is fair to pay $5,000,000, 8% of the replacement cost of all Regional's schools. That percentage is the difference between the percentage of the regional budget Winslow contributed in 1993–94 and the percentage of replacement cost of the schools and grounds it will acquire from Regional upon withdrawal.[1]

The Legislature may not have been consistent in basing a local school district's share of a regional district's budget on its ability to pay and basing its assumed share of the regional district's debt upon withdrawal on the replacement cost of school property. That inconsistency, however, does not bear on whether school property a withdrawing district may acquire has a market value that exceeds what that district may have paid for the property as its share of the regional district's budget over the years. For such a comparison to be meaningful, we would need to know at least the present market value of the property acquired by the withdrawing district as a percentage of the market value of all the regional district's property. That percentage would have to be compared to the local district's year-to-year contributions to the regional district's budget that were used to pay the original cost of the property. We do not have those figures.

Our conclusion is that Winslow does not have the authority to pay Regional anything for the schools it will acquire by law upon

---

[1] Winslow does not state in its brief what sum it should be permitted to pay Regional upon withdrawal. However, it does develop the 8% differential and in its reply brief does not quarrel with the $5,000,000 figure calculated in the board of review's brief.

withdrawal even if the result in some sense would be inequitable. The remedy for such inequity must be provided by the Legislature. Also, we do not see evidence in this record of any inequity.

Affirmed.